IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Mitch Randall Yawn and Juanita Mae Stanley d/b/a Flowertown Bee Farm and Supplies, | ) Civil Action No. 2:17-cv-440-MBS ) ) **AMENDED ORDER AND OPINION** |
| Plaintiffs, | ) ) |
| v. | ) ) |
| Dorchester County; Town of Summerville; Allen Aviation, Inc; and Al Allen, | ) ) ) ) ) |
| Defendants. | ) ) |

## I.        PROCEDURAL HISTORY

This case arises as the result of an aerial mosquito spray conducted by Dorchester County, South Carolina ("Defendant") that Mitch Randall Yawn and Juanita Mae Stanley ("Plaintiffs") allege killed millions of bees on their bee farm, Flowertown Bee Farm and Supplies. On January 27, 2017, Plaintiffs filed suit against Defendant; the Town of Summerville, South Carolina;[1] Allen Aviation, Inc; and Al Allen[2] in the Court of Common Pleas for Dorchester County, South Carolina. ECF No. 1. The case was removed to federal court on February 13, 2017. Id. In an amended complaint, filed on August 18, 2017, Plaintiffs allege violations of the Fifth and Fourteenth Amendments of the U.S. Constitution. ECF No. 28 at 7. Specifically, Plaintiffs allege that the spray and subsequent death of the bees amounted to an

---

[1] The Town of Summerville, South Carolina, was terminated from this action pursuant to a stipulation of dismissal filed on September 25, 2017. ECF No. 37.
[2] Allen Aviation, Inc. and Al Allen were dismissed on May 6, 2019 after successful mediation. ECF Nos. 87, 88. A stipulation of dismissal with prejudice was entered on June 18, 2019. ECF No. 93.

1

unconstitutional Taking and that the Due Process and Equal Protection Clauses were violated because their property was taken without notice and opportunity to object. Id. at 7-9. Plaintiffs bring their federal Constitutional claims under 42 U.S.C. § 1983. Plaintiffs also bring state constitutional claims under South Carolina Constitution Article I, §§ 13, 22, the Takings Clause; and Article I, § 2, the Due Process and Equal Protection Clauses. Id. at 9-11. Plaintiffs also bring claims of negligence, trespass, and strict liability under the South Carolina Tort Claims Act. Id. at 11-13.

On December 16, 2019, Defendant filed a motion for summary judgment. ECF No. 101. Defendant argues that Plaintiffs have failed to properly state a § 1983 claim. Additionally, Defendant argues that in the event a § 1983 claim was properly alleged, its actions did not violate the constitution. Defendant did not address the state law claims in its motion.  Plaintiffs filed a response in opposition on January 14, 2020. ECF No. 105. A hearing was held on Defendant's motion on February 26, 2020. ECF No. 112.

## II.    FACTUAL BACKGROUND

In 2016, Defendant received numerous calls from concerned citizens asking Defendant to take action to combat the growing number of mosquitoes in the area, which can transmit the zika virus to humans. ECF No. 101-1 at 10. Officials working for Defendant determined that the usual method to control mosquito populations, spraying with a truck, would not allow mosquito killing agents to reach all areas with mosquito populations. Id. at 9.  Therefore, Defendant hired Allen Aviation to perform various aerial sprays of a mosquito killing agent. ECF No. 28 at 5. Defendant states that the purpose of the aerial spray was to stop the spread of the zika virus. ECF

No. 101-2 at 35. The zika virus was a serious health concern in 2016.[3] At the time of the spray, there were confirmed cases of the zika virus in South Carolina. Id. at 35-36. Clayton Gaskins ("Gaskins"), the Mosquito Abatement Coordinator for Defendant, coordinated the aerial sprays. ECF No. 101-1 at 3. Tracey Langley, the public information officer for Defendant, placed notices about the first aerial spray with numerous television news channels and in Charleston, South Carolina's Post and Courier newspaper. Id. at 11-12. Gaskins also made a courtesy call to various beekeepers to inform them that an aerial spray was to take place, in order to give beekeepers further opportunity to protect their bees from the chemicals. Id. at 5. Gaskins admitted that he made a mistake and did not call Plaintiffs on this occasion. Id. at 16. Plaintiffs did not take any precautions to protect their bees. The aerial spray occurred on August 28, 2016, which Plaintiffs allege resulted in the killing of millions of Plaintiffs' bees. ECF No. 28 at 5.

### III.  LEGAL STANDARDS

#### A. Summary Judgment

The court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). The moving party will be entitled to a judgment as a matter of law if the "nonmoving party has failed to make a sufficient showing on an essential element of her case." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Accordingly, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Id. at 323–24. The moving party must initially show that there is no genuine issue of

---

[3] Morgan Hennessey, DVM, Marc Fischer, MD, and J. Erin Staples, MD, PhD; Zika Virus Spreads to New Areas — Region of the Americas, May 2015–January 2016, Centers for Disease Control and Prevention (January 22, 2016), https://www.cdc.gov/mmwr/volumes/65/wr/mm6503e1.htm.

material fact. Id. at 323. Once the movant has made this showing, the non-moving party must demonstrate specific, material facts that give rise to a genuine issue. Id. at 324. A "mere scintilla" of evidence is insufficient to overcome the summary judgment motion. Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986).

### B. 42 U.S.C. § 1983

Title 42, U.S.C. § 1983 provides a vehicle through which plaintiffs can seek relief for violations of their civil rights. Section 1983 states, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Municipalities are considered "persons" under § 1983. A municipality may be sued if "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" caused a Constitutional tort. Monell v. New York City Dep't. of Soc. Serv., 436 U.S. 658, 690 (1978). The "policy which ordered an unconstitutional act can be established by a single decision by proper municipal policymakers." Pembaur v. City of Cincinnati, 475 U.S. 469, 484 n.11 (1986).

### C. Fifth Amendment of the United States Constitution

The state's power of eminent domain allows it to take private property for public use. The Fifth Amendment of the Constitution requires that the state compensate those from whom it takes property for public use, providing that "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Fourteenth Amendment applies the Fifth

4

Amendment to the states. Murr v. Wisconsin, 137 S. Ct. 1933, 1942 (2017).  Often, the Takings Clause is implicated in cases where the government appropriates land or other real property from individuals. However, the Takings Clause also applies to cases where the government appropriates personal property. Horne v. Dep't of Agric., 135 S. Ct. 2419, 2427 (2015)(noting that "people still do not expect their property, real or personal, to be actually occupied or taken away").  The test to determine if the Takings Clause was violated requires a reviewing court to determine if there was a Taking, and then whether such a Taking "'deprives the owner of all economically valuable use' of the item taken." Id. (quoting Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 323 (2002). Some courts impose an affirmative act element to Takings Clause claims. Chae Bros., LLC v. Mayor & City Council of Baltimore, No. CV GLR-17-1657, 2018 WL 1583468, at *8 (D. Md. Mar. 30, 2018)(stating that "'merely...incidental or consequential' damage to private property—even when resulting from government action—is, at most, 'compensable as a tort.'")(quoting Ridge Line v. United States, 346 F.3d 1346, 1355–56 (Fed. Cir. 2003)).

The state's power of eminent domain is separate and distinct from the state's police power. The police power refers to the state's "general power of governing." Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 536 (2012). Specifically, such power "extends to all matters affecting the public health or the public morals." Stone v. Mississippi, 101 U.S. 814, 818 (1879).

## IV.     ANALYSIS AND DISCUSSION

The court must first determine whether Defendant, a municipality, enacted a policy that would subject it to liability under § 1983.  In this case, Gaskins determined that the usual method of mosquito abatement was not effective given the growing mosquito population and the

geographical limitations of truck sprays. ECF No. 101-1 at 6. Gaskins reported this information to his supervisor, Jason Ward ("Ward"), the Dorchester County Administrator. Id. at 7. Ward instructed Gaskins to contact officials in Berkeley County, South Carolina, and Charleston County, South Carolina, to inquire about aerial sprays, as those counties had conducted aerial sprays in the past. Id.  Ward also contacted the South Carolina Department of Health and Environmental Control, which suggested that Defendant conduct aerial sprays. Id. at 8. With this information, Ward requested and received funding to conduct the aerial sprays from the Dorchester County Council, and ultimately conducted the aerial sprays. Id. at 9. The court finds that the plan adopted by municipal officials working for Defendant to combat the mosquito problem and ultimate decision to conduct the aerial spray was a policy that was officially adopted by Defendant and satisfies the requirements of a § 1983 claim.

      The court must now determine whether a Constitutional tort occurred. Plaintiffs allege that the decision to conduct the aerial spray and the resulting destruction of the bees amounts to an unconstitutional Taking in that the state exercised its power of eminent domain. Defendant argues that it exercised its police power to protect the public from mosquitoes and the zika virus that they carry. Defendant further submits that it did not affirmatively act to take Plaintiffs' bees for public use.

      Courts have illustrated the distinction between the power of eminent domain and the police power. In Lech v. Jackson, a husband and wife sued police officers and the city of Greenwood Village, Colorado, after police officers damaged their home. C/A No. 18-1051, 2019 WL 5581699 (10th Cir. Oct. 29, 2019). In Lech, officers used a "BearCat," a Humvee-like vehicle, to "open multiple holes" in the home to extract a dangerous criminal. Id. at *2. As a result of the prolonged extraction operation, the Lech home "was rendered uninhabitable." Id.

The Leches brought a claim under the Takings Clause. The district court found that, in raiding and destroying the Lech home to remove a dangerous criminal, the city was exercising its police power and not its eminent domain power. Id. Accordingly, the district court awarded no compensation.

On appeal, the Court of Appeals for the Tenth Circuit reasoned that, "when the state acts to preserve the 'safety of the public,' the state 'is not, and, consistent[ ] with the existence and safety of organized society, cannot be, burdened with the condition that the state must compensate [affected property owners] for pecuniary losses they may sustain' in the process." Id. at *5 (quoting Mugler v. Kansas, 123 U.S. 623, 669 (1887)). The Tenth Circuit ruled that "when the state acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a Taking for purposes of the Takings Clause." Id. Courts in other Circuits, as well as two district courts in this Circuit, have adopted this reasoning. See, e.g., AmeriSource Corp. v. United States, 525 F.3d 1149, 1153 (Fed. Cir. 2008); Patty v. United States, 136 Fed. Cl. 211, 214 (2018)("The distinction between an exercise of the police power and a constitutional Taking has been characterized . . . as 'whether the governmental action operates to secure a benefit for or to prevent a harm to the public.'")(quoting Morton Thiokol, Inc. v. United States, 4 Cl. Ct. 625, 630 (1984)); Cybernet, LLC v. David, No. 7:16-CV-16-RJ, 2018 WL 5779511, at *16 (E.D.N.C. Nov. 2, 2018); White v. City of Greensboro, 408 F.Supp.3d 677, 703 (M.D.N.C. 2019) (holding that property seized during the execution of a search warrant was not the basis of a Takings Clause claim and that "when law enforcement officials exercise their authority to seize [or] impound [property]...or otherwise enforce criminal law, law enforcement exercises its police power, not its power of eminent domain").

In their memorandum in opposition to Defendant's motion for summary judgment, Plaintiffs state that Defendant's decision to spray "may [have been] within [Defendant's] police power," but assert that Defendant "cannot benefit the public by taking the personal property of the Plaintiffs without paying them just compensation." ECF No. 105 at 7. Furthermore, in oral argument, Plaintiffs' attorney argued that he believed that the spray was an exercise of police power but that it was clearly a taking of property without just compensation.

It is undisputed that the spray was conducted to prevent the spread of disease, a matter that would affect public health. Such an action fits squarely within the state's police power. "If the injury complained of is only incidental to the legitimate exercise of governmental powers for the public good, then there is no taking of property for the public use, and a right to compensation, on account of such injury, does not attach under the Constitution." Chicago, B. & Q. Ry. Co. v. People of State of Illinois, 200 U.S. 561, 593–94 (1906). The loss of Plaintiff's bees was unintentional; it was an unfortunate consequence to a proper exercise of Defendant's police power. Because Defendant was exercising its police power, and not its power of eminent domain, the Takings Clause is not implicated.

The court recognizes the importance of bees to agriculture, the economy, and the environment, as well as the need to mitigate threats to bee colonies. See, e.g., https://www.fda.gov/animal-veterinary/animal-health-literacy/helping-agricultures-helpful-honey-bees (accessed March 12, 2020). However, because Plaintiffs are not entitled to federal compensation, the court will remand Plaintiffs' state law claims for further consideration. See 28 U.S.C. § 1367(c)(providing that a district court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction").

## V. CONCLUSION

Defendant's motion for summary judgment, ECF No. 101, is **GRANTED**. This matter is hereby **REMANDED** to the Court of Common Pleas for Dorchester County, South Carolina, pursuant to 28 U.S.C. § 1367(c). Defendant's motion to exclude, ECF No. 102, is **DENIED** as moot.

**IT IS SO ORDERED.**

Charleston, South Carolina  /s/ Margaret B. Seymour
Dated: May 5, 2020  Margaret B. Seymour
Nunc Pro Tunc March 17, 2020  Senior United States District Judge